UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

UNITED STATES OF AMERICA                                        **Plaintiff**

v.                                              Criminal Action No. 3:22-cr-37-RGJ

JERLEN HORTON                                                  **Defendants**
CHICOBY SUMMERS

* * * * *

**MEMORANDUM OPINION AND ORDER**

Defendant Jerlen Horton ("Horton") is charged with conspiracy to possess with intent to distribute controlled substances (Count 1), possession with intent to distribute fentanyl, heroin, and cocaine base (Counts 2, 3, and 4), possession of a firearm in furtherance of drug trafficking (Count 5), and possession of a firearm by a prohibited person (Count 7). [DE 35]. Defendant Chicoby Summers ("Summers") is charged with conspiracy to possess with intent to distribute controlled substances (Count 1), possession with intent to distribute fentanyl, heroin, and cocaine base (Counts 2, 3, and 4), possession of a firearm in furtherance of drug trafficking (Count 6), and escape (Count 8). [*Id.*]. The matter is set for trial on July 22, 2024. [DE 31]. Horton and Summers (collectively, "Defendants") submitted five pretrial motions and motions *in limine*, and the United States filed a response to Summers' motion to suppress. [DE 49; DE 50; DE 51; DE 52; DE 54; DE 56]. Additionally, the United States filed a 404(b) notice, to which Summers objects. [DE 46; DE 48].

A final pretrial conference was held on July 9, 2024, after which Defendants and the United States filed post-hearing briefs. [DE 53; DE 57; DE 58]. The Court reserved judgment on all pending matters until after the parties had a final opportunity to brief them. The motions before the Court fall into three discrete categories: (1) Summers' motion to suppress evidence related to

1

a traffic stop in Oklahoma, (2) Summers' motion to bifurcate Count 8 and Horton's motion to bifurcate Count 7, and (3) Summers' objections to the evidence contained in the United States' 404(b) notice.  The Court addresses each in turn.

## I.   Motion to Suppress Oklahoma Traffic Stop Evidence

Summers moves to suppress "all evidence obtained and statements made as a result of the seizure and search" on July 16, 2023.[1]  [DE 51 at 227].  Summers argues that officers smelling marijuana was an insufficient basis for a "warrantless search," therefore Summers' Fourth Amendment rights were violated, and the evidence must be suppressed.  [*Id.* at 227–28].  The United States responds that (1) the motion to suppress is untimely, (2) no constitutional violation occurred, and (3) Defendants "lack standing to challenge the search of the van."  [DE 56 at 248].

### A.  Timeliness

As an initial matter, the Court will consider the motion to suppress filed after the deadline it set.  "If a party does not meet the deadline for making a Rule 12(b)(3) motion, the motion is untimely.  But a court may consider the defense, objection, or request if the party shows good cause."  Fed. R. Crim. P. 12(c)(3); *see also United States v. Trujillo-Molina*, 678 F. App'x 335, 337 (6th Cir. 2017) ("[A] district court may entertain an untimely motion if the party shows good cause.") (internal quotation marks omitted); *United States v. Walden*, 625 F.3d 961, 965 (6th Cir. 2010) ("Good cause is a flexible standard heavily dependent on the facts of the particular case as found and weighed by the district court in its equitable discretion.  At a minimum, it requires the party seeking a waiver to articulate some legitimate explanation for the failure to timely file.").  It is true that the Court set a deadline of June 17, 2024 for motions to suppress [DE 31], and the

---

[1] Horton moves to "adopt and join in" Summers' motion "as if it had been filed by himself."  [DE 54].  "Without objection from the [United States]," the motion is **GRANTED**.  *United States v. Frazier*, No. 3:17-CR-00130, 2019 WL 4242412, at *1 (M.D. Tenn. Sept. 6, 2019).

United States asserts that it provided discovery materials related to the Oklahoma traffic stop in November 2023.  [DE 56 at 246].  Summers' motion was filed on July 11, 2024—well after the deadline.  [DE 51].  But at the final pretrial conference, the Court gave Defendants and the United States until "the end of the week" to file additional briefing on "any of the issues" discussed. [Unofficial Pretrial Transcript at 50].  While Summers does not explain why he has "good cause" to file the motion after the deadline, the United States' 404(b) notice filed on June 25, 2024 prompted an objection from Summers as to the use of the Oklahoma traffic stop evidence.  [DE 46].  This issue was discussed extensively at the pretrial conference and is within the scope of the additional briefing requested by the Court.  As a result, the Court will consider the merits of the motion.

### B.  Defendants' Fourth Amendment Rights Were Not Violated

First, the United States is correct that Defendants lack standing to challenge the search of the vehicle because "passengers typically do not have standing to challenge the probable cause to search a vehicle, assuming that the passenger's seizure was otherwise lawful."  *United States v. Stepp*, 680 F.3d 651, 668 n. 11 (6th Cir. 2012) (citing *Rakas v. Ill.*, 439 U.S. 128, 148 (1978)); *see also United States v. Bah*, 794 F.3d 617, 626 (6th Cir. 2015) ("Courts have routinely held that passengers who have no expectation of privacy or possessory interest in a stopped vehicle do not have standing to challenge the validity of a subsequent search of that vehicle on Fourth Amendment privacy grounds.") (collecting cases).  Defendants in this case were passengers and allege no possessory interest in the vehicle.

Second, even if Defendants did have standing to challenge the search, the officer here would not have violated their Fourth Amendment rights.  "When a police officer makes a traffic stop, the driver of the car is seized within the meaning of the Fourth Amendment."  *Brendlin v.*

*Cal.*, 551 U.S. 249, 251 (2007).  The same is true of a passenger.  *Id.*  In general, "searches conducted outside the judicial process, without prior approval by judge or magistrate, are *per se* unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions."  *Arizona v. Gant*, 556 U.S. 332, 338 (2009) (quoting *Katz v. United States*, 389 U.S. 347, 357 (1967)).  One of those exceptions is "a search incident to a lawful arrest."  *Id.* (citation omitted).  Additionally, "because '[t]he standard of probable cause is peculiarly related to criminal investigations, not routine, noncriminal procedures,'" the Fourth Amendment contains a "community caretaker" exception.  *United States v. Lewis*, 869 F.3d 460, 462 (6th Cir. 2017) (quoting *South Dakota v. Opperman*, 428 U.S. 364, 370 n.5 (1976)).  In such circumstances, police officers need not have a warrant for a "limited intrusion" on an individual's privacy.  *Id.* at 463.  The exception "applies most clearly when the action of the police is 'totally divorced from the detection, investigation, or acquisition of evidence relating to the violation of a criminal statute[.]'"  *Id.* (quoting *United States v. Brown*, 447 F. App'x 706, 709 (6th Cir. 2012)).

The vehicle investigation in Oklahoma began as a "welfare check," with an officer approaching "a black Chrysler van" parked on the shoulder of the highway "with flashers on."  [DE 56 at 247].  The police officer approaching the vehicle "immediately" smelled marijuana and could see smoke coming from the vehicle.  [*Id.* at 249].  As the United States points out, an officer smelling marijuana "amounts to probable cause."  [DE 56 (citing *United States v. Foster*, 376 F.3d 577, 588 (6th Cir. 2004)].  As a result, even if Defendants had standing to challenge the search, their Fourth Amendment rights would not have been violated because (1) the officer approached the vehicle under the "community caretaker" exception and (2) the officer had probable cause to search the vehicle upon smelling marijuana and seeing smoke coming from the vehicle.  Accordingly, Summers' motion to suppress is **DENIED**.

**II.     Motions to Bifurcate Count 7 (firearm charge) and Count 8 (escape charge)**

Federal Rule of Criminal Procedure 8(a) explains the conditions necessary for multiple

counts to be properly joined:

> The indictment or information may charge a defendant in separate counts with 2 or
> more offenses if the offenses charged—whether felonies or misdemeanors or
> both—are of the same or similar character, or are based on the same act or
> transaction, or are connected with or constitute parts of a common scheme or plan.

Fed. R. Crim. P. 8(a).   A district court may construe this rule broadly to "promote the goals of

trial convenience and judicial efficiency.'"  *United States v. Graham*, 275 F.3d 490, 512 (6th Cir.

2001) (quoting *United States v. Wirsing*, 719 F.2d 859, 862 (6th Cir. 1983)).  But courts have "no

discretion on the question of severance" if Rule 8(a)'s requirements are not met.  *United States v.*

*Jakits*, No. 2:22-CR-194, 2023 WL 2431717, at *8 (S.D. Ohio Mar. 9, 2023) (quoting *United*

*States v. Hatcher*, 680 F.2d 438, 441 (6th Cir. 1982)).

Even if the requirements of Rule 8(a) are met, Federal Rule of Criminal Procedure 14(a)

creates a mechanism for a court to sever a count at its discretion.  *See United States v. Hang Le-*

*Thy Tran*, 433 F.3d 472, 478 (6th Cir. 2006).  Rule 14(a) states: "If the joinder of offenses or

defendants in an indictment, an information, or a consolidation for trial appears to prejudice a

defendant or the government, the court may order separate trials of counts, sever the defendants'

trials, or provide any other relief that justice requires." Fed. R. Crim. P. 14(a).  "In order to prevail

on a motion for severance, a defendant must show compelling, specific, and actual prejudice from

a court's refusal to grant the motion to sever."  *United States v. Saadey*, 393 F.3d 669, 678 (6th

Cir. 2005) (citation omitted).  If the defendant shows prejudice, still a court "must balance the

public's interest in avoiding multiple trials with the defendant's interest in a fair trial."  *United*

*States v. Miller*, No. 3:20-CR-58-KAC-HBG, 2021 WL 3854784, at *2 (E.D. Tenn. Aug. 27, 2021)

(citing *Wirsing*, 719 F.2d at 864–65).

A. *Summers' Motion to Bifurcate Count 8 (escape charge)*

Summers filed two motions to separate Count 8 from the other charges in the indictment.
[DE 49; DE 52].  In the first motion, Summers argues that Count 8 should be severed for a separate
trial because the United States seeks to introduce "highly prejudicial information on this charge,"
and that many of the 404(b) issues related to this evidence could be remedied by severing Count
8.  [DE 49 at 221].  In the second motion, Summers clarifies that he seeks "a bifurcated trial" on
Count 8 in which the escape charge is not "made known to the jury until after the jury has
determined innocence or guilt" on the other charges because knowledge that Summers "was on
federal supervised release at the time of the alleged conduct in this case would be highly
prejudicial."  [DE 52 at 230].  The United States responds in its post-hearing brief that trying Count
8 with the other counts "would not be overly prejudicial" because (1) "this evidence goes directly
to establish defendant Summers' consciousness of guilt," and (2) the recovered ankle monitor that
Summers allegedly cut off is "directly probative" of his identity.  [DE 53 at 237–38].

First, the Court finds that the escape charge is properly joined under Rule 8(a).  "An escape
charge is sufficiently related to a substantive offense to be joined for trial if (1) the charges are
'related in time,' (2) defendant fled to avoid prosecution, and (3) defendant was in custody because
of the substantive charge."  *Miller*, 2021 WL 3854784, at *5 (quoting *United States v. Kaler*, 11
F. App'x 400, 402 (6th Cir. 2001)).  The escape charge meets the first two criteria set out in *Kaler*
for when an escape charge is "sufficiently related" to another offense.  *See Kaler*, 11 F. App'x at
402.  It is "related in time" in that the United States alleges it occurred while the conduct related
to the conspiracy to possess with intent to distribute charge (Count 1) was ongoing.  And the United
States also alleges that Summers fled to "avoid prosecution" for the charges brought in this case.
[DE 53 at 238 ("Summers wanted to avoid being tracked by law enforcement.")].  The third

condition in *Kaler* is not met because Summers was not "in custody *because of*" the other substantive charges. *Miller*, 2021 WL 3854784, at *5 (citing *Kaler*, 11 F. App'x at 402) (emphasis added). But *Kaler* does not say this is *necessary* for an escape charge to be sufficiently related to the other charges in an indictment—it only says that it is *sufficient*. *Id.* Construing Rule 8(a) "liberally"—as the Court is required to do, *Wirsing*, 719 F.2d at 862—the Court finds that the escape charge is "logically related" to the other counts, *Graham*, 275 F.3d at 512 (quoting *Wirsing*, 719 F.2d at 863), such that it meets Rule 8(a)'s requirements.

Second, the Court finds that, given the circumstances, a bifurcated trial is appropriate under Rule 14(a). The escape charge would require evidence that rises to the level of "compelling, specific, and actual prejudice" to Summers as it relates to the other charges. *Saadey*, 393 F.3d at 678. In particular, that charge would require informing the jury that Summers had been previously convicted of a felony and was on supervised release. This information, as it relates to the other charges, would "prevent the jury from making a reliable judgment about guilt or innocence" on the other charges. *Zafiro v. United States*, 506 U.S. 534, 539 (1993). And, on the other hand, the United States will not be significantly prejudiced by the bifurcation. First, it has other methods available to demonstrate identity. Indeed, as Summers indicated at the pretrial conference, there is "no dispute" over his identity. [Unofficial Pretrial Transcript at 32]. While the United States is correct that Summers does not enjoy the right to "stipulate the evidence away," [DE 53 at 238 (citing *United States v. Trejo*, 471 F. App'x 442, 450 (6th Cir. 2012) (quoting *Old Chief v. United States*, 519 U.S. 172, 189 (1997))], eliminating the significant prejudice to Summers by bifurcating the trial here will not diminish its case. Second, whether the underlying alleged conduct related to the escape charge is flight evidence probative of consciousness of guilt is less clear in this case because, as Summers argues, the escape charge is for fleeing supervision for a *previous conviction*,

not custody related to these charges.  [DE 57 at 311 (citing *United States v. Dillon*, 870 F.2d 1125, 1128 (6th Cir. 1989))].  Accordingly, Summers' motion to bifurcate Count 8 is **GRANTED**.

### B.  *Horton's Motion to Bifurcate Count 7 (firearms charge)*

As discussed at the pretrial conference, Horton moves in his post-hearing brief to bifurcate the possession of a firearm by a prohibited person charge (Count 7).  [DE 58 at 313].  He argues that this would be prejudicial for the same reasons that Summers argues the escape charge would be prejudicial to him—it would require evidence of his previous conviction.  [*Id.*].  In its post-hearing brief, the United States argues that Count 7 is properly joined and is not overly prejudicial. [DE 53 at 239–41].

First, the Court finds that Count 7 is properly joined.  As the United States argues, Horton is also charged with possessing a firearm in furtherance of drug trafficking.  [*Id.* at 240].  Because of the clear connection between the alleged firearm charges and the alleged drug-related charges, Count 7 is properly joined under Rule 8(a).  *See Graham*, 275 F.3d at 512 (finding joinder proper where drug charges and firearm charges occurred in same time frame and were financially connected); *c.f. United States v. Chavis*, 296 F.3d 450, 458 (6th Cir. 2002) (holding firearm offense was not properly joined with drug charges where there was "no evidence or allegation" that they were "part of the same act or transaction").

Regardless, the Court still finds that a bifurcated trial on Count 7 is appropriate under Rule 14(a).  "[A] court can reduce the potential for prejudice by bifurcating a felon-in-possession count from the other counts."  *United States v. McGuire*, No. 2:11-00003, 2012 WL 668803, at *7 (M.D. Tenn. Feb. 29, 2012) (citation omitted); *see also United States v. Eubanks*, No. 3:06-CR-00105-R, 2009 WL 3171993, at *4 (W.D. Ky. Sept. 29, 2009) ("Here, trying the felon in possession counts after the other counts in the Indictment would be only a minor burden on the public . . . [o]n

8

the other hand, there is a real possible prejudice in the jury knowing Defendant is a convicted felon."). To avoid this prejudice, Horton's motion to bifurcate Count 7 is **GRANTED**.

### III.    Objections to 404(b) Evidence

The United States filed a timely notice of its intent to introduce Rule 404(b) evidence, arguing that the proffered evidence is either *res gestae*, inextricably intertwined, or admissible under a 404(b) exception. [DE 46]. Summers filed an objection to the proffered evidence, arguing that it was not admissible under any of these justifications.[2] [DE 48].

*Res gestae*, also known as "background" or "extrinsic" evidence, is an exception to the Rule 404(b) bar on other act evidence.

> Proper background evidence has a causal, temporal, or spatial connection with the charged offense. Typically, such evidence is a prelude to the charged offense, is directly probative of the charged offense, arises from the same events as the charged offense, forms an integral part of a witness's testimony, or completes the story of the charged offense.

*United States v. Gibbs*, 797 F.3d 416, 423 (6th Cir. 2015) (quoting *United States v. Hardy*, 228 F.3d 745, 750 (6th Cir. 2000)). The Sixth Circuit recognizes "severe limitations as to temporal proximity, causal relationship, or spatial connections among the other acts and the charged offense" so as to not run afoul of the goals of Rule 404(b). *United States v. Sadler*, 24 F.4th 515, 555 (6th Cir. 2022) (citation and internal quotations omitted).

Additionally, Rule 404(b) "is not implicated when the other crimes or wrongs evidence is part of a continuing pattern of illegal activity." *United States v. Adams*, 722 F.3d 788, 822 (6th Cir. 2013) (quoting *United States v. Barnes*, 49 F.3d 1144, 1149 (6th Cir. 1995)). To be "intrinsic" an act must be "part of single criminal episode" with the charged conduct. *Id*. This is distinct

---

[2] Here again, Horton moves to "adopt and join in" Summers' motion "as if it had been filed by himself." [DE 50]. "Without objection from the [United States]," the motion is **GRANTED**. *Frazier*, 2019 WL 4242412, at *1.

from *res gestae* evidence, which occurs at a different time or under different circumstances than the charged conduct. *See United States v. Churn*, 800 F.3d 768, 779 (6th Cir. 2015).

Finally, evidence of a "crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Fed. R. Evid. 404(b)(1). There are three steps to analyzing admissibility of 404(b) evidence. First, a court considers "whether there is a sufficient factual basis that the act occurred; second, whether the act is being offered for an appropriate reason; and third, whether the probative value of the evidence is substantially outweighed by the unfair prejudicial impact of its use at trial." *Gibbs*, 797 F.3d at 425 (citing *Adams*, 722 F.3d at 810). Appropriate reasons for offering 404(b) evidence include "for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b)(2).

Below, the Court addresses each piece of proffered evidence and the relevant arguments individually. The Court notes that "[a] ruling on a motion in limine is no more than a preliminary, or advisory, opinion that falls entirely within the discretion of the district court." *United States v. Yannott*, 42 F.3d 999, 1007 (6th Cir. 1994) (citation omitted). The Court may therefore "alter its ruling during the course of the trial." *United States v. Mize*, 498 F. Supp. 3d 978 (S.D. Ohio 2020) (citing *Luce v. United States*, 469 U.S. 38, 41–42 (1984))

### A. *Defendants' Alleged Affiliation with Victory Park Crips Gang*

The United States seeks to introduce evidence that Defendants were part of the Victory Park Crips, a group it alleges is a local Louisville street gang. It cites a number of Sixth Circuit cases where courts upheld the admissibility of gang affiliation evidence. [DE 53 at 236–37]; *see United States v. Ford*, 761 F.3d 641, 649 (6th Cir. 2014) (citing *United States v. Williams*, 158 F.

App'x 651, 653–54 (6th Cir. 2005)) ("Evidence of gang affiliation is relevant where it demonstrates the relationship between people and that relationship is an issue in the case, such as in a conspiracy case."); *United States v. Gibbs*, 182 F.3d 408, 430 (6th Cir. 1999) (quoting *United States v. Thomas*, 86 F.3d 647, 652 (7th Cir. 1996)) ("Gang affiliation is particularly relevant, and has been held admissible, in cases where the interrelationship between people is a central issue."). On the other hand, gang affiliation evidence "is inadmissible if there is no connection between the gang evidence and the charged offense." *Ford*, 761 F.3d at 649–50 (quoting *United States v. Anderson*, 333 F. App'x 17, 24 (6th Cir. 2009)). Summers argues that the gang affiliation evidence is "largely irrelevant," would be "unduly prejudicial," and that the United States has not produced evidence of gang affiliation. [DE 57 at 311]. Horton argues that clothing with "Victory Park" written on it is not evidence of gang affiliation but is merely a neighborhood in Louisville. [DE 58 at 314]. Additionally, Horton asserts that the gang evidence here fails Rule 403 balancing. [*Id.*]; *see United States v. Sherrill*, 972 F.3d 752, 765 (6th Cir. 2020) (quoting *United States v. Tolbert*, 8 F. App'x 372, 378 (6th Cir. 2001)) ("We have cautioned trial courts to be particularly careful in admitting evidence of gang affiliation, 'since most jurors are likely to look unfavorably upon a defendant's membership in a street gang.'")].

The evidence the United States intends to introduce to demonstrate gang affiliation is clothing found in Defendants' residence bearing the name "Victory Park," and that Defendants and "co-conspirators" were observed wearing "Victory Park" clothing. [DE 53 at 237]. It asserts the evidence of their gang affiliation "helps complete the picture" of the conspiracy count. [*Id.*]. At the pretrial conference, the United States stated that the evidence of the "Victory Park" clothing located in Defendants' residences will be used to link them to those residences. [Unofficial Pretrial Transcript at 29]. As Horton argued in response, that evidence would be permissible for that

purpose but would not require any evidence of gang affiliation because "Victory Park" is simply the name of a Louisville neighborhood.  [*Id.* at 30].  The United States also asserts that the conspiracy was part of one continuing pattern of criminal activity, extending back to the conduct leading to Defendants' prior conviction and continuing uninterrupted until their arrest in California in this case.  [*Id.* at 28].  Summers responded that nothing in the record indicated that Defendants had acknowledged gang affiliation as part of their guilty pleas for prior convictions.  [*Id.* at 33; DE 57 at 311].

Here, like in *Ford*, "evidence of gang affiliation" could be relevant "because it demonstrates the relationship amongst the co-conspirators."  761 F.3d at 650.  But the United States' proffered evidence so far is not admissible for these purposes because, standing alone, it merely shows affiliation with a geographic location, not an affiliation with a street gang that would prove an element of the conspiracy charge.  On the information before the Court, evidence of the "Victory Park" clothing will be admissible as circumstantial evidence to show Defendants' connection to particular residences.  But, to this point, the United States has not put forward a sufficient factual basis to prove gang affiliation or that it establishes a relationship between co-conspirators, and so the Court will exclude it for this purpose because the probative value would be substantially outweighed by the risk of unfair prejudice.  Fed. R. Evid. 403.

### B. *Defendants' Previous Convictions*

Because the Court will bifurcate Count 7 and Count 8—the two charges where evidence of a previous conviction is relevant and necessary to prove the elements of the crime—there is no basis to admit evidence of Defendants' previous convictions as it relates to the other counts.  They are not related closely enough to the conspiracy charge to constitute *res gestae* or intrinsic evidence.  *See Sadler*, 24 F.4th at 557 (holding prior heroin sales were not intrinsic evidence or

*res gestae* and explaining "[w]e require a much stronger connection between the prior act and the conduct charged to support a finding that the past act was intrinsic or *res gestae* evidence.") (citation omitted).  And, even if the prior convictions met the other requirements for admission under 404(b), they would remain inadmissible under Rule 403.  As a result, the Court will exclude evidence of Defendants' prior convictions for purpose of all counts other than Count 7 and Count 8.

On Count 7 and Count 8, the United States would be entitled to prove the prior conviction because it goes to the elements of the crime.  When charged with felon-in-possession, "although the government must accept a *defendant's* offer of an admission that the defendant has a prior qualifying conviction but that does not state the name of the underlying felony, no such requirement exists when the defendant makes no offer or refuses the *government's* offer of a stipulation."  *United States v. Johnson*, 803 F.3d 279, 283 (6th Cir. 2015)) (citing *Old Chief*, 519 U.S. at 191–92 and *United States v. Ham*, 628 F.3d 801, 811 n. 1 (6th Cir. 2011)) (emphasis in original).  Therefore, Horton's prior convictions could be admissible for the purposes of the bifurcated Count 7.  Similarly, to prove escape, the United States would be required to show Summers was in "custody . . . by virtue . . . of [a] conviction of any offense."  18 U.S.C. § 751(a).  Therefore, Summers' previous convictions could be admissible for the purpose of the bifurcated Count 8 as well.

### C.  *Summers' Supervised Release and GPS Monitor*

The United States seeks to introduce evidence that Summers was on supervised release at the time of the crimes alleged in the indictment and cut off his GPS ankle monitor before fleeing to California.  [DE 46 at 201–02].  The United States contends that, aside from its relevance to the escape charge, this evidence constitutes part of the flight which demonstrates "consciousness of

guilt" for the other charges against Summers.  [DE 53 at 238].  It also argues that the recovery of the GPS ankle monitor is "probative of Summers' identity."  [*Id.* at 238].  Summers responds that fleeing supervised release "is not evidence of flight from *the crime charged*."  [DE 57 at 311 (emphasis in original)].

> *United States v. Oliver* sets out the standard for admissibility for evidence of flight:

> For evidence of flight to be of probative value, four inferences must be drawn: "(1) from the defendant's behavior to flight; (2) from flight to consciousness of guilt; (3) from consciousness of guilt to consciousness of guilt concerning the crime charged; and (4) from consciousness of guilt concerning the crime charged to actual guilt of the crime charged."

397 F.3d 369, 376 (6th Cir. 2005) (quoting *Dillon*, 870 F.2d at 1127).  But courts have "'consistently doubted the probative value in criminal trials' of flight evidence."  *United States v. Oliver*, 397 F.3d 369, 376 (6th Cir. 2005) (quoting *Wong Sun v. United States*, 371 U.S. 471, 483, n. 10 (1963)).  The temporal relationship between a defendant's flight and the charged conduct can be relevant "where the defendant does not know, or his knowledge is doubtful, about the charges and accusations made against him."  *Oliver*, 397 F.3d at 376–77 (citation and internal quotation marks omitted).  But "[w]here it is clear the defendant is aware of the charges against him, the immediacy factor is not required to show consciousness of guilt."  *Id.* at 377.

The United States' 404(b) notice alleges that Summers cut the GPS monitor the morning of November 3, 2021, well before an indictment came in this case, but on the same day search warrants were executed at residences in Louisville.  [DE 46 at 202; DE 53 at 238].  While the escape charge in this case is related to fleeing supervised release, it is still possible that a jury could make the third inference in *Oliver*—"from consciousness of guilt to consciousness of guilt *concerning the crime charged*" in the other counts—from the cutting of the GPS monitor.  *Id.* at 376 (emphasis added).  But that inference would necessarily require informing the jury that

14

Summers had a prior conviction, a fact that would unduly and unnecessarily prejudice Summers. Because the Court will bifurcate Count 8 and the United States has other means of demonstrating flight, [Unofficial Pretrial Transcript at 14], the Court will not admit evidence of the GPS monitor for the purpose of proving the other counts. *United States v. Bell*, 516 F.3d 432, 445 (6th Cir. 2008) ("[T]he district court should consider the government's alternative sources of proving intent when weighing the probative value of other acts evidence.") (citing *United States v. Haywood*, 280 F.3d 715, 723 (6th Cir. 2002)); *see also United States v. Merriweather*, 78 F.3d 1070, 1078–79 (6th Cir. 1996) ("One factor in balancing unfair prejudice against probative value under Rule 403 is the availability of other means of proof."). However, evidence of Summers' supervised release and cutting off his GPS is admissible for the purpose of the bifurcated Count 8.

### D.  Methamphetamine Discovered in St. Louis, Missouri

The United States seeks to introduce evidence that Horton's fingerprint was discovered on a parcel that was delivered from California to St. Louis, Missouri.  [DE 53 at 235].  Initially, the United States described the package in its 404(b) notice as only containing "6,000 grams of methamphetamine."  [DE 46 at 203].  At the pretrial conference, it added that the parcel also contained "2,000 grams of cocaine."  [Unofficial Pretrial Transcript at 26].  As the United States points out, both Defendants are "alleged in Count 1" to have been involved in a conspiracy to possess and distribute drugs—one of which was cocaine base.  [DE 35 at 235].  Therefore, the alleged cocaine found in the parcel is directly related to the elements of the crime charged.  But, because no charges implicate the Defendants in trafficking methamphetamine, the evidence of a large quantity of methamphetamine—a drug not associated with any of the charges against Defendants—is inadmissible under Rule 403.

Horton argues that the United States has not provided the "necessary discovery" related to this evidence, presumably because it only disclosed at the pretrial conference that the parcel found in St. Louis contained cocaine in addition to the methamphetamine. [DE 58 at 315]. It is true that the United States' 404(b) notice does not mention the presence of cocaine in the package. [DE 46 at 203]. But Defendants do not argue that they were not given notice of the evidence in general, only that the government omitted the presence of cocaine. Horton's post-hearing briefing asserts that the United States has "not previously provided all of the necessary discovery regarding these alleged offenses, including lab reports, expert opinions, and police reports" and therefore "denied the defendant the opportunity to investigate and challenge the admission of the evidence prior to trial," but provides no further detail. [DE 58 at 315]. Horton states that "[i]ntroduction of this evidence would require discovery, investigation, and litigation regarding admissibility of these other crimes," leading to delay. [*Id.* at 316].

The United States provided "reasonable" notice of its intent to introduce the package containing drugs in its 404(b) notice. Fed. R. Evid. 404(b); *see also United States v. Davis*, No. 3:11-CR-142, 2012 WL 928344, at *3–4 (E.D. Tenn. Mar. 19, 2012) (emphasizing the "general" nature of required notice). And, in any event, Defendants received notice of the cocaine at the pretrial conference, which was nearly two weeks prior to trial. Courts have approved notice up to one week prior to trial. *See United States v. French*, 974 F.2d 687, 694–95 (6th Cir. 1992) (affirming one-week notice); *United States v. Monde*, No. 6:22-cr-074-REW (E.D. Ky. Dec. 20, 2022) (14 days before trial); *United States v. Vance*, No. 5:20-cr-063-DCR (E.D. Ky. July 22, 2020) (7 days before trial); *United States v. Helton*, No. 0:17-cr-006-DLB (E.D. Ky. Mar. 17, 2017) ("Notice by the date of the Final Pretrial Conference is presumed to be reasonable notice by this Court."). The United States acknowledged that it had "forgotten" to include the cocaine

contents of the package in its 404(b) notice.  [Unofficial Pretrial Transcript at 26].  It is also notable that Horton identifies no particular Fed. R. Crim. P. 16 violation and does not discuss the factors a court should consider for an appropriate remedy.  *See generally United States v. Stone*, 218 F. App'x 425, 435–36 (6th Cir. 2007) (explaining Rule 16 standard).  As a result, (1) the Court does not have enough information to exclude this evidence as a discovery violation and (2) the United States still provided "reasonable" notice of the cocaine for the purposes of Rule 404(b).

Provided that the United States presents this evidence in a manner that does not violate the Confrontation Clause, [*see* DE 58 (citing *Bullcoming v. New Mexico*, 564 U.S. 647, 657 (2011))], the evidence of Horton's fingerprint on the parcel and the cocaine discovered in St. Louis will be admissible.  But, as explained above, the Court will exclude the methamphetamine because its probative value is substantially outweighed by unfair prejudice.  Fed. R. Evid. 403.

### E.  Oklahoma Contact with Law Enforcement and Arrest in California

The United States seeks to introduce evidence that Defendants were using fake identities during an interaction with police in Oklahoma and when they were arrested in California.  It also seeks to introduce evidence that Defendants resisted arrest in California.[3]

"It is today universally conceded that the fact of an accused's flight, escape from custody, resistance to arrest, concealment, assumption of a false name, and related conduct, are admissible as evidence of consciousness of guilt, and thus of guilt itself."  *Cross v. Burton*, No. 2:20-CV-10846, 2022 WL 996012, at *9 (E.D. Mich. Mar. 31, 2022), *aff'd sub nom. Cross v. Braman*, No. 22-1314, 2023 WL 4535509 (6th Cir. July 13, 2023) (quoting *United States v. Serio*, 440 F.2d 827,

---

[3] Horton also argues that the United States did not provide discovery materials in a timely manner for the interaction between Defendants and police in Oklahoma.  [DE 58 at 315–16].  The United States has attached police reports and photos related to this evidence in its response to Summers' motion to suppress. [DE 56].  Here again, for the same reasons as above, Horton does not provide enough information for the court to exclude the evidence on these grounds.

831–32 (6th Cir. 1971)); *see also United States v. Jones*, No. 1:06-CR-10025, 2007 WL 9747319, at *4 (W.D. Tenn. Jan. 8, 2007), *aff'd*, 285 F. App'x 243 (6th Cir. 2008) (citing *United States v. Wright*, 392 F.3d 1269, 1277 (11th Cir. 2004)) (". . . evidence of resisting arrest is probative of [defendant's] consciousness of guilt.")).  As a result, the evidence of Defendants utilizing false identifications, fake names, and resisting arrest in Oklahoma and California is admissible at trial. While Defendants are not on trial for the crime of utilizing a false identification, evidence that they were using any identifications or names other than their own is admissible as consciousness of guilt.

On the other hand, other evidence from the Oklahoma incident is not admissible.  As the United States acknowledged at the pretrial conference, another occupant of the vehicle "took responsibility" for all items found within the vehicle.  [Unofficial Pretrial Transcript at 21].  The United States also acknowledged that it would be "pushing the envelope" if evidence of the cash, cough syrup, and firearm found in the vehicle were admitted at trial, conceding that the central purpose of introducing evidence from the Oklahoma incident was to show Defendants were "together at the same location" with fake driver's licenses.  [*Id.* at 17].

Accordingly, the Court will admit evidence of Defendants using names and identifications that were not their own in Oklahoma and California, as well as evidence of Defendants resisting arrest in California.  The Court will exclude evidence of the firearm, cash, and cough syrup found in the vehicle in Oklahoma under Rule 403.

## IV.    Conclusion

Having considered the parties' arguments and the appliable law, and the Court being otherwise sufficiently advised, it is **ORDERED**:

18

1. Horton's motion to adopt and join Summers' objections to the United States' 404(b) notice [DE 50] is **GRANTED**.

2. Horton's motion to adopt and join Summers' motion to suppress the Oklahoma traffic stop evidence [DE 54] is **GRANTED**.

3. Summers' motion to suppress the Oklahoma traffic stop evidence [DE 51] is **DENIED**.

4. Summers' motion for separate trial on Count 8 [DE 49] is **DENIED as moot**.

5. Summers' motion to bifurcate Count 8 [DE 52] is **GRANTED**.

6. Horton's motion to bifurcate Count 7 [DE 58] is **GRANTED**.

7. As it relates to Summers' objections to the United States' 404(b) evidence, the Court will admit or exclude the United States' proffered evidence consistent with its positions explained in this Memorandum Opinion and Order.

Rebecca Grady Jennings, District Judge
United States District Court

July 18, 2024

cc: counsel of record